IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CASE NO. _____

KIMBERLY BURNS-FISHER,          )
                                )
                Plaintiff,      )
                                )
PENDER COUNTY BOARD OF          )
EDUCATION, STEVEN HILL,         )
SUPERINTENDENT, IN HIS          )
INDIVIDUAL AND OFFICIAL         )
CAPACITIES AND ANNA             )          COMPLAINT
MARIA ROMERO-LEHRER,            )      (WITH JURY DEMAND)
IN HER INDIVIDUAL AND           )
OFFICIAL CAPACITIES             )
                                )
                Defendants.     )
                                )

## INTRODUCTION

In violation of many Board of Education policies and despite its actual knowledge that a second teacher, required by policy, was not present during a class being taught by plaintiff on April 19, 2018, in which a student, known by defendants to have been violent on multiple, prior occasions and known by defendants to have attacked plaintiff in the past, defendants required plaintiff to teach the class alone.

While plaintiff was teaching the class on April 19, 2018, the student with the violent history physically attacked her, causing serious, permanent physical injuries, including eye and brain injuries, that have required ongoing medical treatment, caused her to stop teaching and resulted in permanent injuries.

1

## PARTIES

1.  Plaintiff is an individual, over the age of 18 and under no legal disability, residing in New Hanover County, North Carolina.

2.  Defendant Pender County Board of Education (hereafter Pender BOE) is a local board of education pursuant to the terms of Article 5, Chapter 115C, North Carolina General Statutes.

3.  Defendant Hill is an individual, over the age of 18 and, upon information and belief, under no legal disability, residing at all relevant times, upon information and belief, in Pender County, North Carolina. Defendant Hill is being sued in both his individual and representative capacities and, at all relevant times, acting under color of state law

4.  Defendant Romero-Lehrer is an individual, over the age of 18 and, upon information and belief, under no legal disability, residing at all relevant times, upon information and belief, in Pender County, North Carolina. Defendant Romero-Lehrer is being sued in both her individual and representative capacities and, at all relevant times, was acting under color of state law.

## JURISDICTION AND VENUE

5.  The allegations in the paragraphs above are incorporated by reference.

6.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331. The cause of action arises under 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution.

7.  All events that form the basis of this complaint took place in Pender County, North Carolina which is located in the United States District Court for the Eastern District of North Carolina, Southern Division. This Court has venue in this action pursuant to 28 U.S.C. § 1391 because the claims arose in this judicial district.

2

## **FACTS**

A.     The attack of April 19, 2018

      8.     At the times relevant to the allegations in this matter, Ms. Burns-Fisher was a long-time school teacher and a veteran Pender County school teacher.

      9.     At the time of the injuries giving rise to this complaint, April 19, 2018, Ms. Burns-Fisher had been teaching at Topsail Middle School in Pender County for approximately 4 years and was the 8th grade language arts team leader. She was neither trained nor designated as a special education or "exceptional child" (EC) teacher; she taught "mainstream" classes, meaning classes that were not special education classes.

      10.    At all relevant times, defendant Romero-Lehrer was the principal of Topsail Middle School.

      11.    At certain relevant times, defendant Hill was the superintendent of the defendant BOE.

      12.    At all relevant times, Ms. Burns-Fisher and defendants Romero-Lehrer and Hill were employees of defendant Pender BOE.

      13.    At the time of the injuries giving rise to this complaint, April 19, 2018, defendant Romero-Lehrer assigned Ms. Burns-Fisher to teach a language arts class for her last class of the school day. The class was designated an "inclusion class", meaning it included both special education and "mainstream" students in the class.

      14.    Ten of thirty students in the last class of the day Ms. Burns-Fisher taught on April 19, 2018, had Individual Education Plans (IEP), for different reasons.

3

15.     One of the ten students in the class with an IEP, TB, was a 15-year-old male, who is at the mild end of the autism spectrum and was thus identified as an EC under applicable law and policies. TB only had EC services for math and language arts.

16.     Under applicable law and Pender County BOE policy, when a class has ten of thirty students with IEP's, two teachers must be present. One of those two teachers must be certified and trained as an EC teacher. (Hereafter referred to as the "two-teacher rule".) TB's IEP required the presence of an EC teacher and general education teacher.

17.     For reasons unknown to Ms. Burns-Fisher, the EC teacher scheduled to be in Ms. Burns-Fisher's inclusion class was not working on April 19, 2018. Prior to the beginning of the class, Ms. Burns-Fisher called the school office and advised the office that the EC teacher was not present as required by the applicable law and policies.

18.     Defendant Romero-Lehrer came to Ms. Burns-Fisher's classroom after Ms. Burns-Fisher advised the office that a second teacher was not present, stayed in the classroom for a minute or two, ascertained that, in fact, Ms. Burns-Fisher was the only teacher in the class, then left Ms. Burns-Fisher as the only teacher in the class. Defendant Romero-Lehrer did not send a second teacher to the class or take any action to fix the violation.

19.     April 19, 2018 was not the first time Ms. Burns-Fisher and others at Topsail Middle School had to teach a class where the required second teacher, an EC teacher, was absent. In violation of applicable law and Pender County BOE policy, defendant Romero-Lehrer frequently condoned the teaching of inclusion classes without the required second teacher present.

20.     Toward the end of Ms. Burns-Fisher's last class on April 19, 2018, the students were playing a vocabulary review game, with results on a white board located in the classroom.

4

When Ms. Burns-Fisher took the results down from the white board, student TB called Ms. Burns-Fisher a "moron".

21.     Ms. Burns-Fisher pointed out to student TB that it was inappropriate to call a teacher a "moron".  Ms. Burns-Fisher asked TB to bring his communication log to her. This was not an unusual request for her to make to him at the end of the class.

22.     As TB approached Ms. Burns-Fisher, she was sitting at her desk in front of the classroom, facing the class.  TB walked up to her, lifted his book bag over his head and threw it at Ms. Burns-Fisher, hitting her in the left side of her head.

23.     Ms. Burns-Fisher, though stunned, immediately picked up a walkie talkie device and communicated that she needed a crisis team in her room.

24.     As she began to stand up following the initial attack from TB, for the purpose of getting the other students in her class outside of the room to safety, TB lunged at Ms. Burns-Fisher, hitting her and knocking her back down into her chair.  TB then grabbed the walkie talkie from Ms. Burns-Fisher's hands and charged at her, causing her to fall out of her chair and into a table and filing cabinet. When she fell after TB knocked her down, Ms. Burns-Fisher's head struck the ground, the table, and/or the filing cabinet.

25.     Ms. Burns-Fisher understands that, while she was lying on the floor, another student tried to help her as TB began kicking her in the head and back.

26.     As a result of TB's attack, Ms. Burns-Fisher suffered serious injuries to her body, including her brain.  The injuries Ms. Burns-Fisher suffered in the attack have required ongoing medical treatment, including surgery, from multiple providers, and have kept her from returning to work as of the date of this complaint.

B.     TB's Long history of violence against students and Pender BOE employees was well known to defendants

27.     Beginning in at least 2011, when TB was in elementary school in the Pender BOE system, TB began acts of violence against fellow students, teachers, staff and administrators.  Upon information and belief, defendants knew about all of TB's assaults and attacks on fellow students, teachers, staff and administrators, before he attacked Ms. Burns-Fisher on April 19, 2018, including, at least:

a)     head butting a teacher in the back three times, resulting in the teacher having to go to the hospital, in or about September, 2011;

b)     assaulting a teacher and teacher's assistant during class in or about April, 2012, causing one of the victims to go to the hospital for medical evaluation;

c)     head butting a teacher in or about May, 2012;

d)     kicking, biting, slapping and pulling a teacher's hair and attempting to stab her with a pencil, in or about September, 2012;

e)     striking a teacher in the head with a binder then assaulting office staff and swinging his backpack at a school resource officer, in or about October, 2015;

f)     grabbing an administrator's necktie and pulling him around by it and punching him in the eye, in or around October, 2015;

g)     lunging at a school resource officer and repeatedly trying to bite him, in or about October, 2015;

h)     head butting a teacher in the classroom two times in or about April, 2016;

i)     throwing a teacher's book on the floor and hitting her in the head with his right hand, in the classroom, in or about September, 2016;

j)     attempting to hit a teacher with a rope, like a whip, in or about October, 2017;

k)     kicking a trash over, spitting something at a teacher and slamming the door in Ms. Burns-Fisher's face at the school office in or about October, 2017;

l)     choking a fellow student by grabbing his hoodie, biting a second student who tried to help protect the first victim, to the point of drawing blood, and throwing a jacket at a third student who attempted to intervene to help the other two, in or about November, 2017;

6

m)    hitting another student on the playground, who required treatment from a nurse because of bleeding, in or about November, 2017; and

n)    stabbing a teacher in the arm with a pencil and drawing blood, in the 2017 school year.

28.    At the beginning of the 2017-2018 school year, there was a meeting of all the teachers at Topsail Middle School who were assigned to classes in which TB was a student.  TB had already physically injured or assaulted each of the teachers, except one.  The one teacher who had not been injured by TB had only managed to escape injury by moving quickly enough to avoid being struck.

29.    At this meeting, TB's teachers told defendant Romero-Lehrer that they believed TB did not need to be in mainstream classes, for his benefit and for the benefit and safety of the teachers and students in those classes.

30.    Those teachers continued to express this concern to defendant Romero-Lehrer throughout the school year.

31.    Defendants Pender BOE and Hill knew or should have known of the teachers' expressed concerns.

32.    The defendants neither heeded the teachers' advice nor took action to ensure that further attacks by TB on Pender BOE employees and students did not continue.

33.    Despite knowing of the dangers posed by TB, defendants failed to take appropriate action to protect the teachers and students at Topsail Middle School from TB's known violence or to follow school system policies or principles.

C.    Defendants knew about TB's prior assaults and attack on Ms. Burns-Fisher

34.    TB had attacked Ms. Burns-Fisher, causing injuries resulting in medical treatment, before the April 19, 2018 attack.

7

35.     Defendants knew of the prior attacks.

36.     In December, 2017, while on the school playground during school hours, TB began circling Ms. Burns-Fisher like she was his prey and lunged forward at her, such that the playground had to be cleared and the crisis team called.

37.     In a separate, second December, 2017 incident, on the playground, TB took a sweatshirt from another student.  Ms. Burns-Fisher, one of the teachers supervising the students on the playground, asked TB to return the other student's sweatshirt. Instead of complying, TB hit her in the back, causing her injuries that required medical treatment at a hospital.

38.     Several other teachers witnessed the second December, 2017 attack. A formal report was written, resulting in a 2-day suspension for TB.

39.     Following TB's second December, 2017 attack, Ms. Burns-Fisher requested that TB be removed from her class for her safety and the safety of the students in her class.  Defendant Romero-Lehrer refused.

40.     Given TB's prior attack on Ms. Burns-Fisher, prior acts of violence against other teachers, employees and administrators and students in the school system, the defendants' knowledge of TB's history of violence against school employees generally and Ms. Burns-Fisher specifically, defendants' failure to heed the requests of Ms. Burns-Fisher and other of TB's teachers to remove TB from their classrooms and to take other safety precautions and the known lack of a second teacher in Ms. Burns-Fisher's classroom on April 19, 2018, TB's attack on plaintiff on that date was entirely foreseeable (and preventable) by defendants.

D.      Defendant Pender BOE violated its policies on multiple occasions

41.     On and before April 19, 2018 and, at other relevant times, in addition to the two-teacher rule, defendant Pender BOE had at least the following policies in place:

a)   it is "committed to providing a safe and healthy working environment for all employees";

b)   it is "committed to providing an environment at each school that is safe, orderly and inviting";

c)   the "Board directs the Superintendent to implement a system-wide loss prevention/safety program with the goal of maintaining a safe working environment for employees and a safe learning environment for students";

d)   directing the superintendent to establish a system-wide team to oversee the system's injury and loss prevention efforts, to include "correction of hazards and other unsafe conditions within the school environment";

e)   an "accident investigation protocol" that, among other things, "must also require the identification and implementation of actions to address unsafe conditions to prevent recurrence of the incident";

f)    "the board seeks to provide a work and school environment free from violence or the threat of violence against employees, students or other persons";

g)    "the board will not tolerate assaults, threats or harassment from any student";

h)    "[s]tudents are prohibited from assaulting, physically hurting, attempting to injure or intentionally behaving in such a way as could reasonably cause injury to any person";

i)    "[s]tudents are prohibited from directing toward any other person any language that threatens force, violence or disruption, any sign or act that constitutes a threat of force, violence or disruption";

j)    "[d]isruptive behavior in the classroom will not be tolerated";

k)    "[t]he board will not tolerate assaults, threats or harassment from any student";

l)    "[s]tudents are prohibited from assaulting, physically injuring, attempting to injure or intentionally behaving in such a way as could reasonably cause injury to any other person";

m)    "[t]he board will not tolerate the presence of weapons or destructive devices, bomb or terrorist threats, or actions that constitute a clear threat to the safety of students and employees"; and

n)    "[s]tudents are prohibited from engaging in behavior that constitutes a clear threat to the safety of other students or employees." Understandably, the defendant Pender BOE then defines "[b]ehavior constituting a clear threat to the safety of

9

others" as including, but not limited to, "an attack by a student on another person whereby the victim suffers obvious severe or aggravated bodily injury".

42.     By failing to take appropriate action regarding TB with the knowledge of his history of dangerous and violent behavior against Pender BOE students and employees generally and Ms. Burns-Fisher in particular, defendants Pender BOE and Hill violated their policies on April 19, 2018 and, as a result, TB attacked Ms. Burns-Fisher, causing her serious and permanent injuries as will be more particularly set forth below.

## CLAIM I: VIOLATION OF SUBSTANTIVE DUE PROCESS RIGHTS IN THE FOURTEENTH AMENDMENT PURSUANT TO 42 U.S.C. § 1983

43.     BOE is a "local government" entity for the purposes of 42 U.S.C. § 1983 (hereafter "§ 1983").

44.     BOE, as a local government entity, is liable for its officials' actions under § 1983 because its officials, defendants Superintendent Hill and Principal Romero-Lehrer's, execution of its policies, practice and custom violated plaintiff's liberty interests in bodily integrity protected by the Fourteenth Amendment.

A.     Defendants, by their affirmative actions, created and contributed to the danger that led to plaintiff's injuries or rendered plaintiff more vulnerable to the danger created.

45.     Defendants required TB to be placed in the inclusion class taught by plaintiff, despite repeated requests not to do so and despite their knowledge of TB's past violent behavior against administrators, students and teachers, including plaintiff.

46.     Generally, and specifically during the 2017-2018 school year, despite the two-teacher rule, defendants required teachers at Topsail Middle School, including plaintiff, to teach inclusion classes when two teachers were not present, placing them in danger.

10

47. In part, the two-teacher policy was implemented for the benefit and safety of the students and teachers assigned to teach inclusion classes, such as plaintiff.

48. By being required to teach inclusion classes without the required two teachers present, especially those with TB, due to his history of violence, students and teachers at Topsail Middle School, including plaintiff, were placed in danger.

49. By placing TB in inclusion classes, especially without the required two teachers present, given his known history of violence, defendant BOE placed students and teachers at Topsail Middle School, including plaintiff, in danger.

50. On April 19, 2018, defendants again had actual knowledge that there were not two teachers in the inclusion class taught by plaintiff in which TB was a student.

51. Despite plaintiff's report to defendant Romero-Lehrer on April 19, 2018 that two teachers were not present in the inclusion class in which TB was a student, she was required to teach the class, thus creating a danger to plaintiff and contributing to that danger.

52. As a direct and proximate result of defendants' actions, plaintiff was initially knocked to the floor when TB hit her in the head with his book bag and then, again without the presence of a second teacher as required by the two-teacher rule, repeatedly kicked in the head and other parts of her body while lying on the floor, sustaining serious and permanent injury.

53. Defendants' actions violated plaintiff's substantive due process rights under the 14th Amendment of the Constitution and 42 U.S.C. § 1983.

B. <u>Defendant BOE, by the execution of its official policy or custom by defendants Hill and Romero-Lehrer inflicted injuries on plaintiff that are protected by her constitutional liberty interests in bodily integrity protected by the Fourteenth Amendment.</u>

i. <u>Requirement that plaintiff teach the inclusion class on April 19, 2018</u>

11

54.     As set forth in section D above, defendants had various policies in place that, in part, were for the benefit and safety of administrators, students and teachers, such as plaintiff.

55.     As indicated in paragraph 16, above, defendants had in place a policy that required two teachers for any inclusion class assigned by the defendants to be taught by plaintiff or other teachers at the school.

56.     In part, the two-teacher policy was implemented for the benefit and safety of the students and teachers assigned to teach inclusion classes, such as plaintiff.

57.     As set forth above, defendants had actual knowledge of repeated acts of violence by TB against various administrators, students and teachers in the school generally and against plaintiff specifically.

58.     Despite its safety policies identified in paragraph 41, above, generally and its two-teacher policy, identified in paragraph 16, specifically, defendant regularly and customarily required its teachers, including plaintiff, to teach inclusion classes without two teachers, including those in which TB was a student.

59.     Despite its policies and knowledge of the lack of two teachers available to teach the inclusion class on April 19, 2018 in which TB was a student, due to its custom and practice, defendants required plaintiff to teach the class.

60.     As a direct and proximate result, plaintiff was attacked by TB and suffered serious and permanent injuries, which was foreseeable by the defendants.

61.     Defendants' actions violated plaintiff's substantive due process rights under the 14th Amendment of the Constitution and 42 U.S.C. § 1983.

        ii.     Requirement that TB be included in mainstream classes

62.     Due to TB's long, well-documented, history of violence, alleged in paragraph 27, above, all the teachers at Topsail Middle School assigned to classes in which TB was a student expressed to the defendant BOE, through defendant Romero-Lehrer that, for their benefit and safety as well as the benefit and safety of TB (as well as other students), he should not be in mainstream classes.

63.     Despite their knowledge of TB's history of violent attacks, as alleged in paragraph 27, above and despite numerous BOE policies concerning safety of students and teachers, set forth in paragraph 41, above, defendants continued to place TB in mainstream classes.

64.     During the 2017-2018 school year, defendants required teachers at Topsail Middle School, including plaintiff, to teach TB in mainstream classes.

65.     Thus, due to their custom and practice, defendants regularly placed teachers and students at Topsail Middle School, including plaintiff, in situations where they were in danger from TB.

66.     Defendants' actions violated plaintiff's substantive due process rights under the 14th Amendment of the Constitution and 42 U.S.C. § 1983.

67.     As a direct and proximate result, plaintiff was seriously and permanently injured on April 19, 2018, which was entirely foreseeable by the defendants.

C.      <u>Defendants failed to adequately and properly train employees and failed to adequately enforce policies and guidelines related to safety and student behavioral violations, resulting in foreseeable injuries to plaintiff in violation of her rights under the United States Constitution and 42 U.S.C. § 1983.</u>

68.     As alleged above, defendants were aware of many acts of violence by TB over several years against administrators, staff, fellow students and teachers, including plaintiff, by TB at schools within the supervision and authority of the defendant BOE.

13

69. Defendants had in place various policies and procedures, set forth at paragraph 41, above, providing for the safety of administrators, staff, students and teachers at Topsail Middle School, including plaintiff.

70. Defendants had in place policies and procedures set forth at paragraph 41, above, concerning discipline of students.

71. Despite its policies and procedures, upon information and belief, defendants did not adequately and properly train its personnel to enforce the safety and disciplinary standards generally and, with regard to TB, specifically.

72. Defendants did not enforce the safety and disciplinary standards as they pertained to TB, despite his numerous acts of violence and requests by teachers for protection, all known to defendants.

73. Illustrative of defendants' failures to adequately and properly train its personnel to enforce the BOE's safety and disciplinary standards:

a)    defendant BOE's policy states it is "committed to providing a safe and healthy working environment for all employees" and "providing an environment […] that is safe". Yet, defendants required plaintiff to continue teaching TB despite his prior assaults and attack on her and, on April 19, 2018, with actual knowledge that the required second teacher was not present in her room, required plaintiff to teach the class in which TB was a student;

b)    despite the policy directing the superintendent to establish a system-wide team to oversee the system's injury and loss prevention efforts, to include "correction of hazards and other unsafe conditions within the school environment", defendants allowed TB to remain in "mainstream" classes generally and in plaintiff's classes and the classroom on April 19, 2018, specifically, with actual knowledge of his prior violence against administrators, other students, staff and teachers, including plaintiff;

c)    defendant BOE's policies had an "accident investigation protocol" that required, in part, the "identification and implementation of actions to address unsafe conditions to prevent recurrence of the incident". However, with regard to TB and TB's ongoing violence toward others in the school system generally and plaintiff, specifically, that did not occur, such that plaintiff was left alone in her classroom

14

on April 19, 2018 despite her (and others') repeated, expressed concerns to defendants about her safety and with the knowledge, on that date, that required staffing was not present;

d)      defendant BOE's policy states that "the board will not tolerate assaults, threats or harassment from any student". In fact, as alleged in paragraph 27, above, defendants continuously permitted TB to assault, threat and harass fellow students, staff, administrators and teachers and insisted that he remain in mainstream classes, including those taught by plaintiff, despite repeated requests from teachers, including plaintiff, to take action to stop the assaults and attacks inflicted by TB;

e)      despite the policies that it would not "tolerate assaults, threats or harassment from any student" and despite the knowledge that one potential safeguard in furtherance of that policy—the requirement that two teachers be present for "inclusion" classes—was not in place, defendants required plaintiff to teach the inclusion class in which TB was a student on April 19, 2018;

f)      although defendant BOE had a policy stating that "[s]tudents are prohibited from assaulting, physically hurting, attempting to injure or intentionally behaving in such a way as could reasonably cause injury to any person", defendants refused to remove TB from inclusion classes or to take action to prevent TB from doing, on multiple occasions, what the policy states was "prohibited";

g)      similarly, despite the BOE policy that states "[s]tudents are prohibited from […] any sign or act that constitutes a threat of force, violence or disruption", defendants, with full knowledge of TB's long history of actual violence against others on BOE premises, repeatedly required plaintiff to teach inclusion classes in which TB was allowed to remain, including the April 19, 2018 class taught by plaintiff;

h)      in the presence of defendant BOE policies that it would "not tolerate assaults, threats or harassment from any student", defendants allowed TB to remain in inclusion classes, including the April 19, 2018 class taught by plaintiff, ignoring repeated pleas from TB's teachers to remove him and take action due to his ongoing assaults, threats and violence against BOE employees and students;

i)      over the course of several school semesters, TB repeatedly caused and attempted to cause injury to many different people on school grounds within the BOE school system, including plaintiff, prior to the April 19, 2018 attack, in direct violation of defendant BOE's policy stating "[s]tudents are prohibited from assaulting, physically injuring, attempting to injure or intentionally behaving in such a way as could reasonably cause injury to any other person". Yet, defendants continued to refuse the pleas by plaintiff and other teachers to take action that would have prohibited TB's attacks and assaults that would have kept students, teachers, staff and administrators safe and likely have avoided TB attack against plaintiff on April 19, 2018.

15

74.     As a direct and proximate result of defendants' failures to adequately properly train its personnel and ongoing failures to enforce the safety and discipline policies in place, plaintiff was seriously and permanently injured on April 19, 2018, which was entirely foreseeable by the defendants.

### CLAIM II:  DEFENDANTS ACTED WITH DELIBERATE INDIFFERENCE TO PLAINTIFF'S CONSTITUTIONAL LIBERTY INTERESTS IN BODILY INTEGRITY PROTECTED BY THE FOURTEENTH AMENDMENT

75.      Defendants knew of TB's long history of violent behavior against administrators, students and teachers generally and of his prior attack on plaintiff, which required hospitalization.

76.     Before April 19, 2018, defendants had been repeatedly asked by plaintiff and other teachers to remove TB from inclusion classes due to the danger he posed to students and teachers at Topsail Middle School, including plaintiff.

77.     Defendants had in place various policies, set forth at paragraph 41, above, providing for the safety of administrators, staff, students and teachers at Topsail Middle School, including plaintiff.

78.     Defendants also had in place the two-teacher rule that required two teachers to be present for inclusion classes, for the benefit and safety of students and teachers at Topsail Middle School, including plaintiff.

79.     Defendants had actual knowledge that TB had attacked plaintiff during the 2017-2018 school year, causing her injuries requiring hospitalization.

80.     Defendants knew on April 19, 2018 that there were not two teachers in the inclusion class taught by plaintiff, in which TB was a student.

81.     Defendants, nonetheless, insisted that plaintiff teach the inclusion class on April 19, 2018 in which TB was a student, ignoring the prior warnings and requests regarding TB,

ignoring their own safety policies and ignoring the knowledge that the two-teacher rule was being violated.

82.    Defendants' actions and inactions in ignoring their policies and procedures, with knowledge of TB's prior violent history against teachers and staff at Topsail Middle School generally and against plaintiff, in particular, especially in light of repeated requests by plaintiff and others to remove TB from their "inclusion" classes were deliberately indifferent to plaintiff's constitutional liberty interests in bodily integrity protected by the Fourteenth Amendment.

83.    As a direct and proximate result of defendant's actions and inactions, plaintiff was seriously and permanently injured by TB on April 19, 2018, which was foreseeable by defendants.

### CLAIM III:  SUPERVISORY LIABILITY OF SUPERINTENDENT HILL

84.    The allegations of the previously pled paragraphs are hereby incorporated by reference.

85.    Defendant Hill had actual or constructive knowledge that defendant Romero-Lehrer had repeatedly refused or denied the requests from TB's teachers at Topsail Middle School, including plaintiff, to remove TB from inclusion classes because TB posed a danger to them and to other students.

86.    Defendant Hill had actual or constructive knowledge of TB's prior attacks on administrators, staff, teachers and students at Topsail Elementary School, including prior attacks on plaintiff.

87.    Defendant Hill thus had actual or constructive knowledge that his subordinate, defendant Romero-Lehrer, had not removed TB from inclusion classes generally and specifically had not removed TB from the Language Arts class taught by plaintiff.

17

88.     Defendant Hill had actual or constructive knowledge of the polices of defendant

BOE set forth at paragraph 41, above, including those that required the superintendent to:

a)     implement a system-wide loss prevention/safety program with the goal of
       maintaining a safe working environment for employees and a safe learning
       environment for students" and

b)     establish a system-wide team to oversee the system's injury and loss prevention
       efforts, to include "correction of hazards and other unsafe conditions within the
       school environment".

89.     Leaving TB in inclusion classes with the knowledge of his prior violent behavior

and in violation of multiple BOE policies concerning the safety of employees, despite repeated

warnings from TB's teachers, including plaintiff, that TB posed a pervasive and unreasonable risk

of injuries to plaintiff's constitutional liberty interests in bodily integrity protected by the

Fourteenth Amendment.

90.     Defendant Hill had actual and constructive knowledge of the two-teacher policy in

"inclusion" classrooms, such as the one in which plaintiff was assigned on April 19, 2018, as set

forth above.

91.     Upon information and belief, defendant Hill had actual and constructive knowledge

that defendant Romero-Lehrer regularly allowed inclusion classes to be taught without the

presence of two teachers as required by the policy.

92.     Despite defendant Hill's actual and constructive knowledge, as set forth above and

the risk of injuries to plaintiff's constitutional liberty interests, TB was allowed to remain in the

inclusion class taught by plaintiff and plaintiff was required to teach that class.

93.     Defendant Hill's lack of response, despite his knowledge, was so inadequate as to

show deliberate indifference to, or tacit authorization of, defendant Romero-Lehrer's actions and

inactions.

18

94.     As a direct and proximate result of defendant Hill's inaction, TB remained in the inclusion Language Arts class taught by plaintiff, allowing TB to attack plaintiff resulting in severe and permanent injuries and damages as set forth with more particularity below.

### CLAIM IV:  PERSONAL LIABILITY AGAINST SUPERINTENDENT HILL IN HIS INDIVIDUAL CAPACITY

95.     The allegations of the previously pled paragraphs, are incorporated by reference.

96.     Defendant Hill was, at all relevant times, acting under color of state law.

97.     Defendant Hill's actions and inactions described above deprived plaintiff of her constitutional liberty interests in bodily integrity guaranteed by the Fourteenth Amendment to the United States Constitution.

98.     Defendant Hill knew or should have known of plaintiff's constitutional liberty interests in bodily integrity, established under the law and knew or should have known that his actions and inactions described above could lead to a violation of these rights.

99.     As a direct and proximate result of defendant Hill's actions and inactions, plaintiff has suffered severe and permanent injuries and damages as set forth with more particularity  below.

### CLAIM V:  PERSONAL LIABILITY AGAINST DEFENDANT ROMERO-LEHRER IN HER INDIVIDUAL CAPACITY

100.     The allegations of the previously pled paragraphs, are incorporated by reference.

101.    Defendant Romero-Lehrer was, at all relevant times, acting under color of state law.

102.    Defendant Romero-Lehrer's actions and inactions described above deprived plaintiff of her constitutional liberty interests in bodily integrity guaranteed by the Fourteenth Amendment to the United States Constitution.

103.    Defendant Romero-Lehrer knew or should have known of plaintiff's constitutional liberty interests in bodily integrity, established under the law and knew or should have known that her actions and inactions described above could lead to a violation of these rights.

104.    As a direct and proximate result of defendant Romero-Lehrer's actions and inactions, plaintiff has suffered severe and permanent injuries and damages as set forth with more particularity below.

## **DAMAGES**

105.    The allegations of the paragraphs above are incorporated by reference.

106.    As a foreseeable, direct and proximate result of the actions and inaction alleged above by Pender BOE, defendants Hill and Romero-Lehrer, Ms. Burns-Fisher was violently attacked by TB on April 19, 2018 and has incurred severe and permanent physical and emotional injuries and damages as follows:

a)    traumatic brain injury;
b)    concussion;
c)    headaches;
d)    dizziness;
e)    post-concussion syndrome;
f)    double vision;
g)    impaired memory;
h)    injury to her pituitary gland and related endocrine issues;
i)    anxiety and depression;
j)    post traumatic stress disorder;
k)    speech impairment;
l)    sleep disorder;
m)    she has incurred and will continue to incur medical and related expenses;
n)    she has been unable to continue in her profession of teaching and has therefore lost income, which loss continues and will, upon information and belief, be permanent;
o)    she has lost and will continue to lose the ability to fully engage in the activities and enjoyment of life as she had prior to the attack; and
p)    she has incurred and will continue to incur injuries and damages in such other and additional ways as discovery and trial in this matter may reveal.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, respectfully prays that she have and recover judgment against defendants, jointly and severally, as follows:

1.      That the court enter a declaratory judgment declaring that defendants violated her constitutional rights;

2.      That the court enter a judgment awarding her a commensurate amount of compensatory and non-compensatory damages to adequately make her whole for her past, present and future physical and emotional injuries, to include, but not limited to her physical pain and mental suffering, loss of income and benefits;

3.      That the court enter a judgment against each defendant for punitive damages as a jury may find applies after trial;

4.      That the costs of this action including, but not limited to, pre-judgment and post-judgment interest charged at the legal rate, attorneys' fees pursuant to 42 U.S.C. § 1988 and as otherwise allowed by law and expenses be assessed against defendants;

5.      For a jury trial on all issues of fact; and

6.      For any and all further legal and equitable relief as the court may deem just and proper.

This the 9th day of April, 2021.

**KNOTT & BOYLE, PLLC**


By:      /s/Bruce W. Berger
         Bruce W. Berger
         N.C. State Bar No. 14470
         W. Ellis Boyle
         N.C. State Bar No. 33826
         4800 Six Forks Rd., Suite 100
         Raleigh, NC 27609

21

Telephone: 919-783-5900
Facsimile: 919-783-9650
Email: bruce@knottboyle.com
ellis@knottboyle.com
*Attorneys for Plaintiff*